IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 8 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| Mariano Ayala, Individually and on behalf of all others similarly situated, § § § § | |
| Plaintiff, § | |
| vs. § | Civil Action Number B-03-089 |
| Access Recovery Services, Inc.; Access Recovery Group; and Peter H. Liederman, § § § § | |
| Defendants. § | |

## Motion for Class Certification, and Brief in Support

Mariano Ayala ("Ayala" or "Plaintiff") brought this case as a class action against Access Recovery Services, Inc.; Access Recovery Group; and Peter H. Liederman ("Defendants"). Defendants were properly served but did not answer or otherwise appear, and the Court has entered a default against them.

Because the Court must now determine whether to certify the case as a class action, Plaintiff moves to certify the case pursuant to Rule 23.

### Introduction

This is an individual and class action seeking damages and injunctive relief from Defendants for their violations of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Texas Debt Collection Practices Act, TEX. FIN. CODE Ch. 392 ("Texas DCPA"), both of which prohibit debt collectors from engaging in abusive, deceptive, and unfair practices.

Ayala brought this case as a class action because Defendants' practices are routine and damage many consumer debtors in addition to himself.

**Motion for Class Certification, and Brief in Support, page 1**

Ayala, sues on his own behalf and, as class representative, sues on behalf of two classes of consumers:

**Class 1.** All consumers in the United States to whom any Defendant sent a collection letter, beginning one year prior to the date this Complaint was filed.

**Class 2** All consumers residing in Texas to whom any Defendant sent a collection letter, beginning two years prior to the date this Complaint is filed. Class 2 consumers to whom any Defendant sent a collection letter beginning one year prior to the date this Complaint was filed are also members of Class 1.

Ayala seeks declaratory relief, money damages, disgorgement, and a permanent injunction forcing Defendants to stop their illegal practices.

### Admitted Facts

By their default, Defendants have admitted the facts in the Complaint. F.R.Civ.P. 8(d); *Hall v. Aetna Cas. and Sur. Co.*, 617 F.2d 1108, 1111 (5th Cir. 1980).

Thus, for purposes of class certification and final judgment, the following facts are established:

1. A substantial part of the events or omissions giving rise to the claims occurred in the Cameron County, Texas.

2. Defendants engaged in collection efforts in Brownsville, Cameron County, Texas by sending debt collection letters to Ayala's address in Brownsville, Texas.

3. Mariano Ayala is an individual residing in Brownsville, Cameron County, Texas.

4.  Ayala and each of the other members of the class are "consumers" as defined by the FDCPA[1] and the Texas DCPA.[2]

5.  Access Recovery Services, Inc. is an out-of-state corporation engaged in the business of collecting debts in this judicial district and elsewhere in the state and nation.

6.  Access Recovery Services, Inc. is a "debt collector" as defined by the FDCPA[3] and the Texas DCPA.[4]

7.  Access Recovery Services, Inc. has not registered to do business in Texas.

8.  Access Recovery Services, Inc. has neither obtained nor filed with the Texas Secretary of State the bond required by the Texas DCPA to conduct a debt collection business in Texas.

9.  Access Recovery Group is an out-of-state corporation engaged in the business of collecting debts in this judicial district and elsewhere in the state and nation.

10. Access Recovery Group is a "debt collector" as defined by the FDCPA and the Texas DCPA.

---

[1]   The FDCPA, 15 U.S.C. 1692a(3), defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt.."

[2]   The Texas DCPA, TEX. FIN. CODE § 392.001(1), defines "consumer" as "an individual who has a consumer debt."

[3]   The FDCPA, 15 U.S.C. 1692a(6), defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

[4]   The Texas DCPA, TEX. FIN. CODE § 392.001(6), defines "debt collector" as "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts."

**Motion for Class Certification, and Brief in Support, page 3**

11. Access Recovery Group has neither obtained nor filed with the Texas Secretary of State the bond required by the Texas DCPA to conduct a debt collection business in Texas.

12. Peter H. Liederman is an individual engaged in the business of collecting debts in this judicial district and elsewhere in the state and nation.

13. Peter H. Liederman is a "debt collector" as defined by the FDCPA and the Texas DCPA.

14. Peter H. Liederman has neither obtained nor filed with the Texas Secretary of State the bond required by the Texas DCPA to conduct a debt collection business in Texas.

15. Defendants sent a variety of debt collection letters to consumers, similar or identical to the letters dated February 22, 2002; August 5, 2002; November 14, 2002; January 17, 2003; March 14, 2003; and March 19, 2003 that they sent to Ayala.

16. In these letters, Defendants represented that if Ayala and the other consumers to whom they sent the letters did not contact them to resolve the alleged debt, they would take further legal action to collect the debt when they did not plan to do so and did not in fact do so.

17. In these letters, Defendants also represented that they would attach or garnish debtors' current wages in Texas when such actions are forbidden under the Texas Constitution and laws.

18. Peter H. Liederman failed to review the letter personally and was not otherwise involved in the collection.

## Relief Sought

Ayala seeks a declaratory judgment pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq.* declaring that Defendants regularly engage in the practices described above and that these practices violate the FDCPA and the Texas DCPA.

As to Defendants' violations of the FDCPA against him individually, Ayala seeks $1,000.00 statutory damages, as provided by the FDCPA, 15 U.S.C. § 1692k(a).

As to members of Class 1, Ayala seeks actual damages of all Class 1 members consisting of all money obtained from them by any defendant, as provided by the FDCPA, 15 U.S.C. § 1692k(a)(1).

As to members of Class 1, Ayala seeks, without regard to minimum individual recovery, an award in the amount of $500,000.00, as provided by the FDCPA, 15 U.S.C. § 1692k(a)(2)(B).

As to the members of Class 2, pursuant to the Texas DCPA, TEX. FIN. CODE § 392.403(a) & (e), Ayala seeks actual damages consisting of all money obtained by any defendant, disgorgement of any monies paid by any Class 2 member to any Defendant, and statutory damages of $100.00 per violation.

Ayala also seeks a permanent injunction prohibiting all Defendants from sending any communication to any consumer in Texas that (1) threatens to take further legal action to collect a debt unless Defendant has documented in writing its intention to institute a lawsuit or (2) threatens to attach or garnish the consumer's current wages.

Ayala also seeks attorneys' fees and costs, as provided by the FDCPA, 15 U.S.C. § 1692k(a)(1), and the Texas DCPA, TEX. FIN. CODE § 392.403(b).

## The Applicable Law

The most widely used test used for analysis of debt collection abuse claims is the least sophisticated consumer standard. "This standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor v. Perrin Landry, deLaunay and Durand,* 103 F.3d 1232, 1236 (5th Cir. 1997).

Violations of both the FDCPA and the Texas DCPA should be evaluated from the perspective of the least sophisticated consumer. However, even from the perspective of the most educated, distrustful, and sophisticated consumer, Defendants' practices are illegal. Defendants threatened to take actions that either they had no intention of taking or could not take under Texas law. Threatening to take action which cannot legally be taken is a clear violation of the FDCPA. *Poirier v. Alco Collections, Inc.,* 107 F.3d 347 (5th Cir. 1997).

Ayala has demonstrated that Defendants engage in the following forms of abusive debt collection.

In their form collection letters, Defendants represented that if the consumers did not contact them to resolve the matter, they would take further legal action to collect a debt when they did not plan to do so and did not in fact do so. This violates the FDCPA, which provides in pertinent part that:

> *A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.* Without limiting the general application of the foregoing, *the following conduct is a violation* of this section: . . . (2) The *false representation of (A) the character, amount, or legal status of any debt* . . . . (4) The *representation or implication that nonpayment of any debt will result in* the arrest or imprisonment of any person or the seizure, *garnishment, attachment, or sale of any property or wages of any person unless such action is lawful* and the debt collector or creditor intends to take such ac-

> tion. (5) The *threat to take any action that cannot legally be taken or that is not intended to be taken.* . . .

15 U.S.C. § 1692k(3) [emphases added].

This practice also violates the Texas DCPA, which provides in pertinent part that:

> Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, *a debt collector may not use a fraudulent, deceptive, or misleading representation* that employs the following practices: . . . (8) misrepresenting the character, extent, or amount of a consumer debt, or *misrepresenting the consumer debt's status in a judicial or governmental proceeding.*

TEX. FIN. CODE § 392.304(a) [emphases added].

In those same letters, Defendants represented that they could attach (or garnish) the wages of Texas residents. Because Texas law does not allow wage garnishment, this threat was false. This violates the same sections of the FDCPA and the Texas DCPA, as well as another section of the Texas DCPA:

> In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: . . . (7) *threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings;* or (8) *threatening to take an action prohibited by law.*

TEX. FIN. CODE § 392.301(a) [emphases added].

These actions establish liability as a matter of law. Whether Ayala or any other class member was misled is not an element of this cause of action. "The question is not whether the plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 392 (D.Del. 1991). Similarly, there is no issue of intent, bad faith or negligence. "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996).

## Grounds for Certification

Mariano Ayala brought this lawsuit as a class action because (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) his claims are typical of the claims of the class, and (4) he can and will fairly and adequately protect the interests of the class. All four criteria of Rule 23(a) and at least one of the criteria of Rule 23(b) must be met for the case to be certified as a class action. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Plaintiff bears the burden of establishing these requirements. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

In determining whether a class will be certified, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (quoting *Miller v. Mackey International, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971).

The merits of the case are not examined and the substantive allegations of the complaint should generally be taken as true. *Eisen v. Carlisle & Jacquelin, supra* at 177.

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. Numerous FDCPA cases have been certified as class actions. *Keele v. Wexler*, 149 F.3d 589 (7th Cir, 1998); *Cope v. Duggins*, 2000 U.S. Dist. Lexis 5081 (E.D.La., April 13, 2000); *Woodard v. Online Information Services*, 191 F.R.D. 502 (E.D.N.C. 2000); *Talbott v. GC Services*; 191 F.R.D. 99 (W.D.Va. 2000); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D.Fla. 1999); *Brink v. First Credit Resources*, 185 F.R.D. 567 (D.Ariz. 1999); *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Borcherding-Dittloff v. Transworld Systems, Inc.*, 185 F.R.D 558 (W.D.Wis. 1999); *Ballard v. Equifax Check Services, Inc.*, 186

F.R.D. 589 (E.D.Cal. 1999); *West v. Costen*, 558 F.Supp. 564, 572-573 (W.D.Va. 1983); *Cheqnet Systems, Inc. V. Montgomery*, 911 S.W.2d 956 (Ark. 1995); *D_Alauro v. GC Services Ltd, Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996); *Stewart v. Slaughter*, 165 F.R.D. 696 (M.D.Ga. 1996); *Gammon v. GC Services*, 162 F.R.D. 313 (N.D.Ill. 1995); *Duran v. Bureau of Yuma, Inc.*, 93 F.R.D. 607 (D.Ariz. 1982).

In this case, Ayala has established that all four Rule 23(a) criteria exist and that the case should be certified both under Rule 23(b)(2) and 23(b)(3). Ayala will discuss each criterion in turn.

### Numerosity — Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F. 2d 1030, 1038 (5th Cir. 1981). However, "[i]mpracticable does not mean impossible." *Rabidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "When the class is large, numbers alone are dispositive . . . ." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986). Where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D.Fla. 1986) (25 sufficient); *Beasley v. Blatt*, 1994 WL 362185 (N.D.Ill. 1994)(24 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan v. Smith Barney*, supra, 113 F.R.D. 60, 62 (N.D.Ill. 1986) (10-29 sufficient); *Sala v. National Railroad Passenger Corp.*, 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D.Ill. 1992) (about 70).

"A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986).

**Motion for Class Certification, and Brief in Support, page 9**

The court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1992), §7.22.A.

Numerosity is satisfied here since Defendants mailed form debt collection letters to consumers in Texas and elsewhere in the country. Such form letters are typically used to contact large numbers of persons.

Thus, although the exact number of consumers is not known at this time, it is easily inferred that there are a significant number of them, so Ayala has satisfied the numerosity requirement.

### Commonality — Rule 23(a)(2)

Rule 23(a)(2) requires that there be a common question of law or fact and that "resolution of common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A common nucleus of fact is present where the defendant has engaged in similar conduct, i.e.- sending a form collection letter to the class members. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members. *Cope v. Duggins*, 2000 U.S. Dist. LEXIS 5081, *9 (E.D.La, April 14, 2000); *Baby Neal for and by Kanter v. Ca-*

**Motion for Class Certification, and Brief in Support**, page 10

*sey*, 43 F.3d 48, 56-57 (3d Cir. 1994). "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Kornburg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); See also *Keele v. Wexler,* supra

"To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter." *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D.Fla. 1999).

Ayala has done just that. Commonality is clear.

### Typicality — Rule 23(a)(3)

Rule 23(a)(3) requires that Ayala's claims be typical of the claims of the class. *Jenkins v. Raymark Industries, Inc.*, 782 F. 2d 468, 472 (5th Cir. 1986).

Ayala's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted); see also, *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598-600 (2d Cir. 1986); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

In this case, typicality is inherent in the class definition — each class member received the same or similar letters and thus was subjected to the same violations as Ayala. Ayala's claims are typical of the claims of the class as a whole.

### Adequacy — Rule 23(a)(4)

There are two criteria for determining adequacy under Rule 23(a)(4):

**Motion for Class Certification, and Brief in Support**, page 11

> (1) The named representatives must have a common interest with the unnamed members of the class, and there must be an absence of conflict or antagonism between the interests of the named plaintiffs and the other members of the proposed class, and
>
> (2) It must appear that the representative parties, through their attorneys, will vigorously prosecute the class claims.

*Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1974).

Ayala's interest is identical to the other class members. He has by his actions shown that there is no antagonism between his interests and those of the absent class members.

Ayala has retained experienced counsel to represent the class.

Plaintiffs' lead counsel Stephen Gardner is a nationally-recognized consumer protection expert who has handled class action and related cases of similar and greater magnitude for many years. Currently, he is in private practice in Dallas, Texas, and also serves Of Counsel to the National Consumer Law Center in Boston. From 1992-1995, Mr. Gardner was Assistant Dean of Clinical Education and visiting assistant professor of law at Southern Methodist University. He was formerly an assistant attorney general in Texas and New York, from 1982 until 1991, involved in major consumer-protection initiatives against such companies as AAMCO, Mobil Oil, Kellogg Company, and TCI Cable. Mr. Gardner's major publications include: H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS (4th ed. 2002) (contributing editor); CONSUMER CLASS ACTIONS, National Consumer Law Center (contributing author); THE PRACTICE OF CONSUMER LAW, National Consumer Law Center (author); UNFAIR AND DECEPTIVE ACTS AND PRACTICES, National Consumer Law Center (contributing author); LOST IN THE SUPERMARKET: CONSUMER CONFUSION AND MARKETING MANIA, NUTRITION LABELING HANDBOOK 1995; SEE DICK AND JANE SUE: A PRIMER ON STATE CONSUMER PROTECTION LAWS, American Law Institute 1992; and HOW GREEN WERE MY VALUES: REGULATION OF ENVIRONMENTAL

MARKETING CLAIMS, Toledo Law Review 1991. He is Board Certified as a Civil Trial Specialist by the Texas Board of Legal Specialization. Among other positions, Mr. Gardner has served as a member of the Board of Directors, of Consumers Union of U.S., Inc. (the publisher of Consumer Reports magazine), 1997-2000; a member of the Board of Directors of the National Association of Consumer Advocates, 1996-2002 (current chair emeritus); and a member of the Consumer Advisory Council of the Federal Reserve Board of Governors, 1986-1989.

Plaintiffs' counsel John Ventura is a nationally-recognized bankruptcy and consumer protection attorney who has handled class action and related cases for years. Currently, he is the Owner of the Law Offices of John Ventura, P.C. with the main office in Brownsville, Texas, an office in Harlingen, Texas and an office in McAllen, Texas. Mr. Ventura is a member of the Consumer Bankruptcy Committee; E-File Committee; Advertisement Review Board for the State Bar of Texas; Member of Consumer Law Council. He has also served as Past President of the Rio Grande Valley Bankruptcy Bar Association, Past Vice-President of the Rio Grande Valley Bankruptcy Bar Association; and Coordinator of the agenda and speakers for the Annual Advanced Bankruptcy Seminar. In addition, Mr. Ventura has authored the following books: THE BANKRUPTCY KIT; THE CREDIT REPAIR KIT; FRESH START: BEATING THE PAYCHECK TO PAYCHECK BLUES; THE SMALL BUSINESS SURVIVAL KIT;, THE WILL KIT; and EVERYTHING YOUR HEIRS NEED TO KNOW, as well as LAW FOR DUMMIES, DIVORCE FOR DUMMIES, the LAW KIT FOR DUMMIES, and GOOD ADVICE FOR A BAD ECONOMY. He has also been a guest on CNN, CNNFN, Bloomberg Television & Radio, The Fox News Channel, National Public Radio, Business Talk Radio, and numerous local radio and television programs around the country.

Richard A. Mlynek is an experienced litigation attorney who worked for a large civil litigation law firm in Corpus Christi and Houston from 1998-2003 before joining

the Law Offices of John Ventura, P.C. this year. Prior to becoming an attorney, Mr. Mlynek worked as a claims adjuster handling property damage and personal injury claims. Mr. Mlynek's practice is now concentrated on consumer and personal injury litigation. Mr. Mlynek is the co-director of the litigation department for the Law Offices of John Ventura, P.C.

The adequacy of both Ayala and his counsel is clear.

### Rule 23(b)(2) — Injunctive and Declaratory Relief

Rule 23(b)(2) requires Ayala to show only that Defendants acted on grounds generally applicable to the class, thereby making both preliminary and final injunctive and declaratory relief appropriate with respect to the class as a whole. *Harik v. California Teachers Ass'n*, 298 F.3d 863, 873 (9th Cir. 2002). The facts are that the entire class of consumers to be represented by Ayala was treated in exactly the same way, as a matter of the proposed class definition.

Defendants sent illegal collection letters to all class members. A pattern of activity that is likely to be the same for all class members is all that is required. *Baby Neal v. Casey*, 43 F.3d 48, 63-64 (3rd Cir. 1994).

Because Texas law allows for injunctive relief, and because Ayala also seeks a declaration that Defendants violated the FDCPA, it is proper to certify this case for injunctive and declaratory relief. Because Defendants also damaged Ayala and other class members, it is appropriate to certify a damages class as well, under Rule 23(b)(30, as discussed in the next section.

### Rule 23(b)(3) — Predominance

Rule 23(b)(3) requires that questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *In re Plywood Anti-Trust Litigation*, 76 F.R.D. 570, 582 (E.D.La. 1976).

**Motion for Class Certification, and Brief in Support, page 14**

"Predominance is a test readily met in certain cases alleging consumer . . . fraud. . . ." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 2249, 2250, 138 L. Ed. 2d 689 (1997) (citations omitted).

Predominance exists when there is an essential common factual link between all class members and the defendants for which the law provides a remedy. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, (9th Cir. 1996).

In this case, the common link is that all class members, by definition, were subjected to defendants' practice of sending letters that violate both the FDCPA and the Texas DCPA.

Where defendants have standardized practices that impact the defined class as a whole, common issues of fact or law predominate over individual questions. *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404 (N.D.Miss. 2000); *Cope v. Duggins*, supra; *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019 (N.D.Miss. 1993).

Here, the only individual issues for trial will be (1) identification of the consumers who were subject to Defendants' collection attempts and (2) determination of the amounts collected from those individual consumers by Defendants, both capable of determination from Defendants' records, after certification. This is not the kind of problem that is a barrier to class certification. *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 678 (N.D.Ill. 1989).

The questions of law and fact common to the members of the class predominate over questions affecting only individual members.

### Rule 23(b)(3) — Superiority

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fair and efficient adjudication of the controversy." *Jenkins v. Raymark Industries, Inc.*, supra at 472. Efficiency is the primary focus in determining whether the class

**Motion for Class Certification, and Brief in Support, page 15**

action is the superior method for resolving the controversy presented. *Gete v. I.N.S.*, 121 F.3d 1285, 1299 (9th Cir. 1997); *Neely v. Ethicon, Inc.*, 2001 U.S. Dist. LEXIS 15599, *38 (E.D.Tex. Aug. 16, 2001).

The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D.Ill. 1992); *Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974)

In this case there is no better method available for the adjudication of the claims that might be brought by each individual debtor subjected to defendants' practice. *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397 (D.N.J. 1990). Class actions are a more efficient and consistent means of trying the legality of a collection letter. *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 600 (E.D.Cal. 1999); *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996); also see *Newberg on Class Actions*, §21.14 (3d ed. 1992).

The efficacy of consumer class actions is recognized particularly where the individual's claim is small, as is the case here. As the U.S. Supreme Court held:

> While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind the vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Kaplan, Predatory Note 497. As concisely recalled in a recent Seventh Circuit opinion:
>
>> "The policy at the very core of the class action mechanism is to overcome the problems that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or rights. A class action solves this problem by

**Motion for Class Certification, and Brief in Support, page 16**

aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997).

*Amchem Products, Inc. v. Windsor, supra* at 117 S.Ct. at 2246.

Class certification of an action for abusive debt collection practices provides an efficient and appropriate resolution of the controversy. *Keele v. Wexler*, 149 F.3d 589 (7th Cir, 1998); *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Brink v. First Credit Resources*, 185 F.R.D. 567 (D.Ariz. 1999); *Borcherding-Dittloff v. Transworld Systems, Inc.*, 185 F.R.D 558 (W.D.Wis. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D.Cal. 1999); *Cheqnet Systems, Inc. v. Montgomery*, 911 S.W.2d 956 (Ark. 1995).

A class action is therefore superior to other available methods for the fair and efficient adjudication of the controversy.

### Prayer

For the foregoing reasons, Plaintiff respectfully requests that the Court certify this action as a class action.

Respectfully submitted,

**John Ventura**
Federal ID No. 1646
State Bar No. 20545700
**Richard A. Mlynek**
Federal ID No. 23125
State Bar No. 24007689
**Law Offices of John Ventura, PC**
62 East Price Road
Brownsville, Texas 78521
Telephone: (956) 546-9398
Telecopier: (956) 542-1478

**Stephen Gardner**
Federal ID No. 16111
State Bar No. 07660600
**Law Office of Stephen Gardner, PC**
6060 North Central Expy., Ste. 560
Dallas, Texas 75206
Telephone: (214) 800-2830
Telecopier: (214) 800-2834

Counsel for Plaintiff and the Class

By: _____
Stephen Gardner

**Motion for Class Certification, and Brief in Support, page 17**