IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED
OCT 0 7 2003
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| **Mariano Ayala,**  Individually and on behalf of all other similarly situated, § § § § | |
| Plaintiff, § | |
| vs. § | Civil No. B-03-089 |
| **Access Recovery Services, Inc.;** **Access Recovery Group; and Peter H. Liederman,** Defendants. § § § § | |

# ORDER

Mariano Ayala ("Ayala" or "Plaintiff") brought this case as a class action against Access Recovery Services, Inc.; Access Recovery Group; and Peter H. Liederman ("Defendants"). Defendants were properly served but did not answer or otherwise appear, and the Court has entered a default against them. Having considered Ayala's motion to certify this case to proceed as a class action, the Court FINDS that the requisites of Rule 23 have been satisfied and ORDERS that this case is certified as a class action, both for injunctive and declaratory relief under Rule 23(b)(2) and for damages under Rule 23(b)(3). The Court does not direct notice to the class at this time, in order to permit Ayala to conduct discovery sufficient to determine the identities and addresses of class members. The Court certifies two classes of plaintiffs:

**Class 1.**   All consumers in the United States to whom any Defendant sent a collection letter during the period from May 14, 2002, to the date of this order.

**Class 2.**   All consumers residing in Texas to whom any Defendant sent a collection letter during the period from May 14, 2001, to the date of this order. (Class 2 consumers to whom

any Defendant sent a collection letter beginning one year prior to the date this Complaint was filed are also members of Class 1.)

Ayala seeks declaratory relief, money damages, disgorgement, and a permanent injunction for Defendants' alleged violations of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Texas Debt Collection Practices Act, TEX. FIN. CODE Ch. 392 ("Texas DCPA"), both of which prohibit debt collectors from engaging in abusive, deceptive, and unfair practices.

**Facts**

By their default, Defendants have admitted the facts in the Complaint. F.R.Civ.P. 8(d); *Hall v. Aetna Cas. and Sur. Co.*, 617 F.2d 1108, 1111 (5th Cir. 1980). Therefore, the following facts are established for all purposes:

1. Mariano Ayala is an individual residing in Brownsville, Cameron County, Texas.

2. A substantial part of the events or omissions giving rise to the claims occurred in Cameron County, Texas.

3. Defendants engaged in collection efforts in Brownsville, Cameron County, Texas by sending debt collection letters to Ayala's address in Brownsville, Texas.

4. Ayala and each of the other members of the class are "consumers" as defined by the FDCPA[1] and the Texas DCPA.[2]

---

[1] The FDCPA, 15 U.S.C. § 1692a(3), defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."

[2] The Texas DCPA, TEX. FIN. CODE § 392.001(1), defines "consumer" as "an individual who has a consumer debt."

5. Access Recovery Services, Inc. is an out-of-state corporation engaged in the business of collecting debts in this judicial district and elsewhere in the state and nation.

6. Access Recovery Services, Inc. has been properly served but has defaulted.

7. Access Recovery Services, Inc. is a "debt collector" as defined by the FDCPA[3] and the Texas DCPA.[4]

8. Access Recovery Services, Inc. has not registered to do business in Texas.

9. Access Recovery Services, Inc. has neither obtained nor filed with the Texas Secretary of State the bond required by the Texas DCPA to conduct a debt collection business in Texas.

10. Access Recovery Group is an out-of-state corporation engaged in the business of collecting debts in this judicial district and elsewhere in the state and nation.

11. Access Recovery Group has been properly served but has defaulted.

12. Access Recovery Group is a "debt collector" as defined by the FDCPA and the Texas DCPA.

13. Access Recovery Group has neither obtained nor filed with the Texas Secretary of State the bond required by the Texas DCPA to conduct a debt collection business in Texas.

14. Peter H. Liederman is an individual engaged in the business of collecting debts in this judicial district and elsewhere in the state and nation.

15. Peter H. Liederman has been properly served but has defaulted.

---

[3] The FDCPA, 15 U.S.C. § 1692a(6), defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

[4] The Texas DCPA, TEX. FIN. CODE § 392.001(6), defines "debt collector" as "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts."

16. Peter H. Liederman is a "debt collector" as defined by the FDCPA and the Texas DCPA.

17. Peter H. Liederman has neither obtained nor filed with the Texas Secretary of State the bond required by the Texas DCPA to conduct a debt collection business in Texas.

18. Defendants sent a variety of debt collection letters to consumers similar or identical to the letters dated February 22, 2002; August 5, 2002; November 14, 2002; January 17, 2003; March 14, 2003; and March 19, 2003, that they sent to Ayala.

19. In these letters, Defendants represented that they would take further legal action to collect the debt when they did not plan to do so–and did not in fact do so–if Ayala and the other consumers to whom they sent the letters did not contact them to resolve the alleged debt.

20. In these letters, Defendants also represented that they would attach or garnish debtors' current wages in Texas. Such actions are forbidden under the Texas Constitution and laws.

### Violations of the Debt Collection Laws

As a general rule, it is not appropriate to determine ultimate issues at the class certification stage. In determining whether a class will be certified, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (quoting *Miller v. Mackey International, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971).

However, in this case, because defendants have defaulted, it is appropriate to consider the merits of the case as well. Further, in order to protect the rights of all concerned, every party to this action may request a motion for rehearing on any portion of this Order at any time prior to the entry

of a final judgment. The Court, however, reserves the right to shorten the period for objection should circumstances warrant it. Consequently, all parties are instructed to file any objection as soon as possible.

The most widely employed test used for analysis of debt collection abuse claims is "the least sophisticated consumer" standard. "This standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor v. Perrin Landry, deLaunay and Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997).

Violations of both the FDCPA and the Texas DCPA should be evaluated from the perspective of the least sophisticated consumer. However, even from the perspective of the most educated, distrustful, and sophisticated consumer, Defendants' practices are illegal. Defendants threatened to take actions that they either had no intention of taking or could not take under Texas law. Threatening to take action which cannot legally be taken is a clear violation of the FDCPA. *Poirier v. Alco Collections, Inc.*, 107 F.3d 347, 349 (5th Cir. 1997).

Ayala has demonstrated that Defendants engaged in the following forms of abusive debt collection: in their form collection letters, Defendants represented that they would take further legal action to collect a debt when they did not plan to do so, and did not in fact do so, if the consumers did not contact them to resolve the matter. This action violates the FDCPA, which provides in pertinent part:

> ***A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.*** Without limiting the general application of the foregoing, ***the following conduct is a violation*** of this section: . . . (2) The ***false representation of (A) the character, amount, or legal status of any debt*** . . . . (4) The

*representation or implication that nonpayment of any debt will result in* the arrest or imprisonment of any person or the seizure, *garnishment, attachment, or sale of any property or wages of any person unless such action is lawful* and the debt collector or creditor intends to take such action. (5) The *threat to take any action that cannot legally be taken or that is not intended to be taken*. . . .

15 U.S.C. § 1692k(3) [emphases added].

This practice also violates the Texas DCPA, which provides in pertinent part that:

Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, *a debt collector may not use a fraudulent, deceptive, or misleading representation* that employs the following practices: . . . (8) misrepresenting the character, extent, or amount of a consumer debt, or *misrepresenting the consumer debt's status in a judicial or governmental proceeding*.

TEX. FIN. CODE § 392.304(a) [emphases added].

In those same letters, Defendants represented that they could attach (or garnish) the wages of Texas residents. Because Texas law does not allow wage garnishment, this threat was false. This violates the same sections of the FDCPA and the Texas DCPA, as well as another section of the Texas DCPA:

In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: . . . (7) *threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings*; or (8) *threatening to take an action prohibited by law*.

TEX. FIN. CODE § 392.301(a) [emphases added].

These actions establish liability as a matter of law. Whether Ayala or any other class member was misled is not an element of this cause of action. "The question is not whether the plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 392 (D.Del. 1991). Similarly, there is no issue of intent, bad faith, or negligence. "Because the Act imposes strict liability, a consumer need not

show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996).

Having determined that the Defendants' actions violated both Federal and Texas law, the Court turns to the merits of class certification.

### Grounds for Certification

Mariano Ayala asserts that this lawsuit should be pursued as a class action because (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) his claims are typical of the claims of the class, and (4) he can and will fairly and adequately protect the interests of the class.

All four criteria of Rule 23(a) and at least one of the criteria of Rule 23(b) must be met for the case to be certified as a class action. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Ayala bears the burden of establishing these requirements. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). He has met that burden.

The substantive allegations of the complaint should generally be taken as true. *Eisen v. Carlisle & Jacquelin, supra* at 177. In this case, since all Defendants have defaulted, the substantive allegations have been established for all purposes.

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. Numerous FDCPA cases have been certified as class actions. *Keele v. Wexler*, 149 F.3d 589 (7th Cir, 1998); *Cope v. Duggins*, 2000 U.S. Dist. Lexis 5081 (E.D.La., April 13, 2000); *Woodard v. Online Information Services*, 191 F.R.D. 502 (E.D.N.C. 2000); *Talbott v. GC Services*; 191 F.R.D.

99 (W.D.Va. 2000); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D.Fla. 1999); *Brink v. First Credit Resources*, 185 F.R.D. 567 (D.Ariz. 1999); *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Borcherding-Dittloff v. Transworld Systems, Inc.*, 185 F.R.D 558 (W.D.Wis. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D.Cal. 1999); *West v. Costen*, 558 F.Supp. 564, 572-573 (W.D.Va. 1983); *Cheqnet Systems, Inc. V. Montgomery*, 911 S.W.2d 956 (Ark. 1995); *D_Alauro v. GC Services Ltd, Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996); *Stewart v. Slaughter*, 165 F.R.D. 696 (M.D.Ga. 1996); *Gammon v. GC Services*, 162 F.R.D. 313 (N.D.Ill. 1995); *Duran v. Bureau of Yuma, Inc.*, 93 F.R.D. 607 (D.Ariz. 1982).

In this case, Ayala has established that all four Rule 23(a) criteria exist and that the case should be certified both under Rule 23(b)(2) and 23(b)(3). The Court will discuss each criterion in turn.

### Numerosity — Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F. 2d 1030, 1038 (5th Cir. 1981). However, "[i]mpracticable does not mean impossible." *Rabidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "When the class is large, numbers alone are dispositive . . . ." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986). Where the class numbers twenty-five or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D.Fla. 1986) (25 sufficient); *Beasley v. Blatt*, 1994 WL 362185 (N.D.Ill. 1994)(24 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan v. Smith Barney*, supra, 113 F.R.D. 60, 62 (N.D.Ill. 1986) (10-29 sufficient); *Sala v. National Railroad Passenger*

*Corp.*, 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D.Ill. 1992) (about 70).

"A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986).

The court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1992), §7.22.A.

Numerosity is satisfied here since Defendants appear to have mailed form debt collection letters to consumers in Texas and elsewhere in the country. Such form letters are typically used to contact large numbers of persons. Thus, although the exact number of consumers is not known at this time, it is easily inferred that there are a significant number of them, so Ayala has satisfied the numerosity requirement. The results of the discovery, which Plaintiff's counsel have represented to the Court that they will undertake, will enable this Court to confirm the accuracy of this Order. Further, the Court in the final section of this Order has ordered counsel to keep the Court apprized of any new facts with regard to this and the other class action elements.

### Commonality — Rule 23(a)(2)

Rule 23(a)(2) requires that there be a common question of law or fact and that "resolution of common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Industries, Inc.*, 782 F. 2d 468, 472 (5th Cir. 1986).

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A common nucleus of fact is present where the defendant has engaged in similar conduct, such as sending a form collection letter to the class members. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members. *Cope v. Duggins,* 2000 U.S. Dist. LEXIS 5081, *9 (E.D.La, April 14, 2000); *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56-57 (3d Cir. 1994). "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Kornburg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); See also *Keele v. Wexler, supra.*

"To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter." *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D.Fla. 1999).

Ayala has met the commonality requirement.

### Typicality — Rule 23(a)(3)

Rule 23(a)(3) requires that Ayala's claims be typical of the claims of the class. *Jenkins v. Raymark Industries, Inc.*, 782 F. 2d 468, 472 (5th Cir. 1986).

Ayala's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted); see also, *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598-600 (2d Cir. 1986); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

In this case, typicality is inherent in the class definition — each class member received the same or similar letters and thus was subjected to the same violations as Ayala. Ayala's claims are typical of the claims of the class as a whole.

### Adequacy — Rule 23(a)(4)

There are two criteria for determining adequacy under Rule 23(a)(4):

> (1) The named representatives must have a common interest with the unnamed members of the class, and there must be an absence of conflict or antagonism between the interests of the named plaintiffs and the other members of the proposed class, and

> (2) It must appear that the representative parties, through their attorneys, will vigorously prosecute the class claims.

*Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1974).

Ayala's interest is identical to the other class members. He has by his actions shown that there is no antagonism between his interests and those of the absent class members.

Ayala has retained experienced counsel to represent the class. Plaintiffs' lead counsel, Stephen Gardner, is a nationally-recognized consumer protection expert who has handled class action and related cases of similar and greater magnitude for many years. Plaintiffs' counsel, John

Ventura, is a nationally-recognized bankruptcy and consumer protection attorney who has handled class action and related cases for years. Richard A. Mlynek is an experienced litigation attorney.

The adequacy of both Ayala and his counsel is clear.

### Rule 23(b)(2) — Injunctive and Declaratory Relief

Rule 23(b)(2) requires Ayala to show only that Defendants acted on grounds generally applicable to the class, thereby making both preliminary and final injunctive and declaratory relief appropriate with respect to the class as a whole. *Harik v. California Teachers Ass'n*, 298 F.3d 863, 873 (9th Cir. 2002). The facts are that the entire class of consumers to be represented by Ayala was treated in exactly the same way, as a matter of the proposed class definition.

Defendants sent illegal collection letters to all class members. A pattern of activity that is likely to be the same for all class members is all that is required. *Baby Neal v. Casey*, 43 F.3d 48, 63-64 (3rd Cir. 1994).

Because Texas law allows for injunctive relief, and because Ayala also seeks a declaration that Defendants violated the FDCPA, it is proper to certify this case for injunctive and declaratory relief. Because Defendants also damaged Ayala and other class members, it is appropriate to certify a damages class as well, under Rule 23(b)(30, as discussed in the next section.

### Rule 23(b)(3) — Predominance

Rule 23(b)(3) requires that questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *In re Plywood Anti-Trust Litigation*, 76 F.R.D. 570, 582 (E.D.La. 1976).

"Predominance is a test readily met in certain cases alleging consumer . . . fraud. . . ." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 2249, 2250, 138 L. Ed. 2d 689 (1997) (citations omitted).

Predominance exists when there is an essential common factual link between all class members and the defendants for which the law provides a remedy. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).

In this case, the common link is that all class members, by definition, were subjected to Defendants' practice of sending letters that violate both the FDCPA and the Texas DCPA.

Where defendants have standardized practices that impact the defined class as a whole, common issues of fact or law predominate over individual questions. *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404 (N.D.Miss. 2000); *Cope v. Duggins*, supra; *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019 (N.D.Miss. 1993).

Here, the only individual issues for trial will be (1) identification of the consumers who were subject to Defendants' collection attempts and (2) determination of the amounts collected from those individual consumers by Defendants, both capable of determination from Defendants' records, after certification. This is not the kind of problem that is a barrier to class certification. *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 678 (N.D.Ill. 1989).

The questions of law and fact common to the members of the class predominate over questions affecting only individual members.

### Rule 23(b)(3) — Superiority

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fair and efficient adjudication of the controversy." *Jenkins v. Raymark Industries, Inc.*, supra at 472.

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Gete v. I.N.S.*, 121 F.3d 1285, 1299 (9th Cir. 1997); *Neely v. Ethicon, Inc.*, 2001 U.S. Dist. LEXIS 15599, *38 (E.D.Tex. Aug. 16, 2001).

The Court must determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D.Ill. 1992); *Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974)

In this case there is no better method available for the adjudication of the claims that might be brought by each individual debtor subjected to Defendants' practice. *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397 (D.N.J. 1990). Class actions are a more efficient and consistent means of trying the legality of a collection letter. *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 600 (E.D.Cal. 1999); *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996); also see *Newberg on Class Actions*, §21.14 (3d ed. 1992).

The efficacy of consumer class actions is recognized particularly where the individual's claim is small, as is the case here. As the U.S. Supreme Court held:

> While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind the vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Kaplan, Predatory Note 497. As concisely recalled in a recent Seventh Circuit opinion:

> "The policy at the very core of the class action mechanism is to overcome the problems that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997).

*Amchem Products, Inc. v. Windsor, supra* at 117 S.Ct. at 2246.

Class certification of an action for abusive debt collection practices provides an efficient and appropriate resolution of the controversy. *Keele v. Wexler*, 149 F.3d 589 (7th Cir, 1998); *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Brink v. First Credit Resources*, 185 F.R.D. 567 (D.Ariz. 1999); *Borcherding-Dittloff v. Transworld Systems, Inc.*, 185 F.R.D 558 (W.D.Wis. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D.Cal. 1999); *Cheqnet Systems, Inc. v. Montgomery*, 911 S.W.2d 956 (Ark. 1995).

A class action is therefore superior to other available methods for the fair and efficient adjudication of the controversy.

Having met his burden, Ayala is entitled to the certification he seeks and it is SO ORDERED.

**Notice to the Class**

Defendants' default has made it difficult to determine the identities of the class members. It will be necessary for Ayala to conduct limited discovery to determine the identities of class members before notice can be given to the class. Since Defendants by their default have admitted the allegations of the Complaint and because the Court has found that Ayala should prevail on the merits of his claims, it is appropriate for Defendants to bear, jointly and severally, the costs of giving notice to the class and they are hereby ORDERED to do so. Ayala is directed to file a status report with the Court within 120 days of the date of this Order advising the Court whether he has been able to determine the identities of class members through discovery directed at Defendants. Counsel shall

also include any information discovered which is relevant to the issues of commonality, numerosity, typicality, and adequacy of the class representative.

Counsel for plaintiffs are to personally serve a copy of this Order and the default judgment on Defendants by means of a process server or some other individual authorized by law to effectuate service. The status and description of all such attempts to serve Defendants shall be included in the status report referenced above.

Signed on this 3rd day of October, 2003.

_____
Honorable Andrew S. Hanen
United States District Judge